IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

XAVIER FAISON,

                        Plaintiff,                              OPINION and ORDER

        v.
                                                                25-cv-2-wmc
ROLLY WAGAS,

                        Defendant.

---

This case arises out of a plaintiff Xavier Faison being searched for drugs by defendant Rolly Wagas, a Wisconsin state trooper, following a routine traffic stop.  While conceding that the initial stop was lawful without a warrant, plaintiff claims that the subsequent search violated the Fourth Amendment.  Both sides have moved for summary judgment on the question of defendant's liability.  (Dkt. #18; Dkt. #25.)  Because the court concludes for the reasons set forth below that defendant Wagas violated plaintiff Faison's right to be free from a search of his person without a warrant or any exception to the warrant requirement, plaintiff's motion will be granted, defendant's motion will be denied, and this case will proceed to trial on damages on June 1, 2026.

UNDISPUTED FACTS[1]

At approximately 7:00 p.m. on June 14, 2023, plaintiff Faison was riding in the passenger seat of a large truck traveling south on Interstate 90 in Monroe County, Wisconsin. Prominently displayed on the truck was the logo of a moving company, "Top Notch Movers."

---

[1] Unless otherwise indicated, the following facts are undisputed and drawn from the parties' proposed findings of facts and responses.

After noticing the truck deviating from its lane, a state trooper pulled alongside the truck and saw that the driver was looking at his phone, while passenger Faison was lounging with his feet out of the passenger window. The trooper initiated a traffic stop based on the lane deviations and the driver operating a commercial vehicle while looking at his phone. The trooper then approached the driver's side of the truck to engage the occupants in conversation, learning that the occupants were heading to Madison after completing a move for someone in Minnesota.

While speaking with the occupants, the trooper noticed a prescription pill bottle near the driver's foot and asked to see it. He then took the pill bottle back to his cruiser to verify it was antibiotics, as reported by the driver, and to conduct a record check of both occupants of the truck. The trooper also contacted dispatch to ask if a "K9 trooper" was available. The trooper further learned from a records check that the driver had two, prior OWI convictions from 2004 and 2008 and one OWI arrest from 2020, although Faison appeared to have none.

When he returned to the truck, the trooper next asked the driver if he was willing to perform field sobriety tests and the driver agreed. Shortly thereafter, backup arrived on the scene, including a trooper with a K9 unit and state trooper Rolly Wagas, the defendant. At both the driver's door seam and passenger door, the K9 exhibited "alert behaviors," including a head snap back to front, standing up on his hind legs, and an increase in respirations. These behaviors generally indicate that the K9 has detected a trained odor and is attempting to locate its source. In this instance, the K9 eventually "alerted" to the rear side of the truck, indicating that he had located a trained odor.

After the K9 handler reported this location to Wagas, Wagas approached Faison, who until then had remained seated in the passenger seat. Faison was polite, cooperative, and friendly. He also made no furtive movements and told Wagas: where they had been working;

2

where they were going; and that he had no idea why the dog alerted on the truck. Wagas then asked Faison to exit the truck, and he readily complied, pausing only to put his headphones in a container and leave them on the front seat. As soon as he got out of the truck, Wagas announced that he was going to search Faison's pockets and ordered him to turn around. Wagas then reached into Faison's pockets, examining the left pocket of his outer sweatshirt first, followed by several other pockets. The search of Faison's pockets revealed no contraband. Wagas then searched the truck, which also revealed no contraband.

Ultimately, the driver received a citation, and Faison received a verbal warning for having his legs hanging out the passenger window.

OPINION

Plaintiff challenges neither the initial traffic stop nor the vehicle, but contends that defendant violated his Fourth Amendment right to be free from unreasonable searches by searching his person without a warrant. In response, defendant argues that the search was reasonable, but even if not, he is entitled to qualified immunity. The court evaluates both arguments below under the familiar summary judgment standards: summary judgment being appropriate when the record demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 391–92 (7th Cir. 2011). The court construes the evidence, and all inferences that reasonably can be drawn from the evidence, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The standard is the same on cross motions for summary judgment: the court evaluates each motion independently, viewing the evidence in

favor of the responding party. *Market Street Associates Ltd. Partnership v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991).

### I.    Fourth Amendment

Warrantless searches of an individual person are "per se unreasonable under the Fourth Amendment" unless certain "well-delineated exceptions apply." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *see also Missouri v. McNeely*, 569 U.S. 141, 148 (2013) ("[A] warrantless search of the person is reasonable only if it falls within a recognized exception."). Moreover, because a warrantless search creates a presumption that the action was *un*reasonable, the defendant is required to produce evidence of a recognized exception to the warrant requirement. *Martinez v. City of Chicago*, 900 F.3d 838, 846 (7th Cir. 2018) (citing *Bogan v. City of Chicago*, 644 F.3d 563, 568–69 (7th Cir. 2011)); *see also Hamilton v. City of New Albany, Indiana*, 698 F. App'x 821, 825 (7th Cir. 2017) (defendant had burden to justify reliance on exception to warrant requirement when impounding abandoned vehicles). Even so, the ultimate burden to prove unreasonableness still falls on the plaintiff. *Bogan*, 644 F.3d at 568. Finally, if the material facts are undisputed, as they are here, analysis of Fourth Amendment "reasonableness is a pure question of law." *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020).

At summary judgment, defendant fails to articulate clearly which exception to the warrant requirement justified his search of plaintiff. For example, in his opening brief in support of summary judgment, defendant cites cases relating to the "automobile exception" and "search incident to arrest exception." (Dft.'s Br. (dkt. #19) 10–11.) However, in his reply brief, defendant concedes that "the search incident to arrest exception does not apply here,"

given that plaintiff was never arrested, and for the first time, asserts that the "exigency exception" applies, offering several new arguments about why this is so.  (Dft.'s Reply Br. (dkt. #36) 1.)  Finally, in his brief in opposition to plaintiff's own motion for summary judgment, defendant asserts that the search was justified by "probable cause" under "the totality of the circumstances."  (Dft.'s Resp. Br. (dkt. #29) 1.)

As an initial matter, "probable cause" and the "totality of the circumstances" are not recognized exceptions to a warrantless search.  Instead, "probable cause" is the *starting* point for obtaining a warrant.  Under the Fourth Amendment, a search or arrest warrant may be issued only by a neutral and detached magistrate, upon an affidavit describing information sufficient to establish probable cause, particularly describing the person to be arrested or place to be searched.  *McNeely*, 569 U.S. at 148 (citations omitted).  As the Supreme Court has explained, "[s]earch warrants are ordinarily required for searches of dwellings," and "no less [is] required where intrusions into the human body are concerned."  *Id.*  Thus, "[a]ny assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search *without a warrant* would reduce the [Fourth] Amendment to a nullity[.]"  *Johnson v. United States*, 333 U.S. 10, 14 (1948) (emphasis added); *cf. Agnello v. United States*, 269 U.S. 20, 33 (1925) (warrantless searches of homes are unlawful "notwithstanding facts unquestionably showing probable cause").

Further, defendant waived any argument that exigent circumstances justified the search by raising and developing it for the first time in his reply brief.  *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[A]rguments raised for the first time in [] reply brief are waived because they leave no chance to respond.")  In any event, defendant's exigent circumstances argument borders on frivolous, as that exception applies only when "there is

*compelling* need for official action and no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509–510 (1978) (emphasis added). Defendant briefly argues that the traffic stop occurred in a grassy area where plaintiff may have been able to hide or discard contraband, but effectively concedes, as he must, that: plaintiff was entirely cooperative; several officers were present to monitor plaintiff's actions, including a K9 unit who could have sniffed both plaintiff and the grassy area; and there was no articulable reason to suspect that plaintiff had contraband on his person or sought to discard it. Certainly, these circumstances do not present a "compelling need" to act without obtaining a warrant, particularly when compared to situations that *have* been deemed as presenting exigent circumstances. *E.g., Michigan v. Fisher,* 558 U.S. 45, 47–48 (2009) (*per curiam*) (law enforcement's need to provide emergency assistance to an occupant of a home); *United States v. Santana,* 427 U.S. 38, 42–43 (1976) (officer engaged in "hot pursuit" of a fleeing suspect); *Michigan v. Tyler,* 436 U.S. 499, 509–510 (1978) (officer's need to enter a burning building to put out a fire and investigate its cause); *Cupp v. Murphy,* 412 U.S. 291, 296 (1973) (limited warrantless search of a suspect's fingernails to preserve evidence that the suspect was trying to rub off was justified "[o]n the facts of this case").

Ultimately, defendant seems to be relying solely on the K9's alert to the back of the moving truck to justify a search of plaintiff. However, the bare fact that police suspect an ongoing crime, without facts suggesting a specific emergency, is plainly not enough to qualify as exigent circumstances. *See Hawkins v. Mitchell*, 756 F.3d 983, 993 (7th Cir. 2014) (the "ordinary investigation of possible crime" is not an exigency); *Jacobs v. City of Chicago*, 215 F.3d 758, 770 (7th Cir. 2000) (that officers are searching for narcotics is not sufficient to constitute exigent circumstances where there were no "[s]pecific facts indicating that evidence [was] likely to be destroyed").

6

This leaves the automobile exception to the warrant requirement, which allows law enforcement officers to search a vehicle if they have probable cause to believe it contains contraband or evidence of illegal activity. *United States v. Ostrum*, 99 F.4th 999, 1005–06 (7th Cir. 2024). This exception was carved out in recognition of the "ready mobility" of automobiles, as well as the "pervasive regulation of vehicles capable of traveling on the public highways." *Collins v. Virginia*, 584 U.S. 586, 591 (2018) (quoting *California v. Carney*, 471 U.S. 386, 392–93 (1985).) "When these justifications for the automobile exception 'come into play,' officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Id.* (quoting *Carney*, 471 U.S. at 392–93.)

In this instance, there is no dispute that defendant had probable cause to search the moving truck based on the K9 unit's alter behaviors. *Florida v. Harris*, 568 U.S. 237, 247–48 (2013) (an alert by a K9 trained to detect narcotics can provide probable cause to search a vehicle). However, the scope of the automobile exception is limited: it "extends no further than the automobile itself." *Collins v. Virginia*, 584 U.S. 586, 594 (2018). And it has long been established that authority to search a vehicle pursuant to the automobile exception does *not* extend to a search of the occupants. Specifically, in *United States v. Di Re,* 332 U.S. 581, 587 (1948), the Supreme Court held that probable cause to search a car did not justify the body search of a passenger. In that case, the government expressly argued that the right to search a car for suspected contraband should include the occupants, because "common sense demands that such rights exist in a case such as this where the contraband sought is a small article which could easily be concealed on the person." *Id.* at 586. However, the Court rejected the government's argument, explaining that "a person, by mere presence in a suspected car,"

does not lose "immunities from search of his person to which he would otherwise be entitled." *Id.* at 587.

The Supreme Court reaffirmed this principle in *Wyoming v. Houghton*, 526 U.S. 295, 297 (1999), while considering whether the automobile exception allows a warrantless search of a passenger's belongings when there is probable cause to believe that the car contains contraband. While the Court answered this question affirmatively, in doing so, it took pains to delineate a clear boundary between searches of property and searches of people, explaining: the Fourth Amendment provided "unique, significantly heightened protection [] against searches of one's person"; and "[e]ven a limited search of the outer clothing ... constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 24–25 (1968).) In contrast, "[s]uch traumatic consequences are not to be expected when the police examine an item of personal property found in a car." *Id.* at 303; *see also United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) ("highly intrusive searches of the person" implicate "dignity and privacy interests" that "simply do not carry over to vehicles"); *Ybarra v. Illinois*, 444 U.S. 85, 91–92 (1979) (a search warrant for a tavern and its bartender did not permit body searches of all the bar's patrons); *Henry v. Hulett*, 969 F.3d 769, 777–78 (7th Cir. 2020) ("the privacy interest in one's body is more acute than the interest in one's property"). Finally, the Supreme Court noted in *Houghton* that a person's pockets and clothing constitute part of the person, not property, for purposes of evaluating a search under the Fourth Amendment. *Id.* at 303, n1.

Thus, defendant has offered no persuasive argument to distinguish *Di Re*, *Houghton* or *Ybarra*, as a matter of law and undisputed fact in this case. Instead, he is left with citing several

cases involving searches of vehicle passengers incident to a lawful arrest, which defendant himself now concedes are inapposite because plaintiff was not arrested.  *See United States v. Thin Elk*, 148 F.4th 595, 598 (8th Cir. 2025) (search incident to arrest); *United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014) (same); *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998) (same); *Pfalzgraf v. Reisner*, No. 23-CV-877-JDP, 2025 WL 1095951, at *10 (W.D. Wis. Apr. 11, 2025) (same).  Accordingly, defendant had no lawful justification to perform a warrantless search of plaintiff's person and his actions violated the Fourth Amendment.

## II.    Qualified Immunity

Defendant contends that even if no recognized exception justified his warrantless search of plaintiff, he is protected by qualified immunity.  Because defendant asserts qualified immunity, plaintiff must show not only that defendant violated his rights, which he has done, but also that his rights were clearly established at the time.  Plaintiff can meet this burden by pointing to either: (1) a closely analogous, binding case that was decided in his favor; or (2) a more general constitutional rule that applies "with obvious clarity" to the defendant's conduct. *Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021).

For the reasons already discussed above, well established constitutional rules apply "with obvious clarity" to defendant's conduct at issue.  First, it is clearly established that an officer must have a valid, recognized exception to the warrant requirement to conduct a warrantless search of a person. *McNeely*, 569 U.S. at 148.  Second, it is clearly established that "probable cause" is not a recognized exception to the search warrant requirement. *Agnello*, 269 U.S. at 33; *Johnson*, 333 U.S. at 14.  Third, it is clearly established that searching an automobile

9

under the automobile exception "extends no further than the automobile itself." *Collins*, 584 U.S. at 595. Fourth, and finally, it is clearly established that probable cause to search a car does not justify search of a passenger in the car. *Di Re,* 332 U.S. at 587; *Houghton*, 526 U.S. at 297. Because these well-established Fourth Amendment principles show that defendant's warrantless search was unlawful, he is also not entitled to qualified immunity.

## ORDER

IT IS ORDERED that:

1. Defendant's motion for summary judgment (dkt. #18) is DENIED.

2. Plaintiff's motion for partial summary judgment on liability (dkt. #25) is GRANTED.

3. The case will proceed to trial on damages with respect to plaintiff's warrantless search claim under the Fourth Amendment.

Entered April 17, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge